Good morning. May it please the Court, John Jordan on behalf of the appellant Roosevelt Anderson, Jr. Judge Callahan, if I could please reserve two minutes for rebuttal. Well, that will be aspirational. We'll try. Thank you, Your Honor. I'll do my best. Your Honor, this is, of course, a criminal appeal after a conviction for criminal copyright infringement. The defendant was convicted of copying Adobe software, Adobe Photoshop software, raised three issues on appeal. The first issue is the jury charge given here. As cited in my brief, B.C. Technical recognizes a case out of the Tenth Circuit that there appears to be differences between the circuit courts as to what the term willful requires the government to prove in this kind of criminal copyright conviction. In B.C. Tech, the Tenth Circuit joined what it called the majority view, that the government is required to prove in this kind of case that the defendant had the specific intent to violate a known legal duty. I would urge the Court to first, in a legal sense, join the majority view and adopt that as the standard in this circuit. I understand there's been a letter submitted by my colleague. Apparently, there's a case that's under submission that we'll have to, this panel will have to check into because they would have priority. And if they're publishing on the instruction, that may have bearing on this case. Then I would, I guess, principally rely on my arguments in the brief on that point since we will be, I guess, in a holding pattern here. I'll address the second sub-issue here, which is if that is the standard, was the charge actually given here not in accordance with that legal standard? And I would argue that it is not. Well, it seems to me you have a little bit of another problem here on the instructional error is that under the Federal Rule of Criminal Procedure 30D, a defendant must state an objection to a jury instruction with specificity. And we've previously held that merely proposing an alternative instruction does not satisfy this standard. So if that's the case, how can your, how can Anderson satisfy the Rule 30D standard here? I think he did here, Your Honor, because he did actually request pinpoint instructions right on this point citing the Moran case. Then there was a general discussion where he argued forcibly for that. The judge indicated he was not going to go along with the defendant's view. And at that point, as a trial attorney, the counsel for Mr. Anderson has to do his best to try to get the best charge he can out of the judge. I don't see here a relinquishment of his objection. He did state he wanted a specific charge given. He, before the case was even argued, the point even argued, gave a pinpoint instruction. He argued forcibly for it. And at the end, I guess I would call it a tactical retreat. He did his best to get the best charge he could out of the judge. Well, but that's not that you can't do anything else, because you have things that are said like, okay, I'll accept that. And then there's more that goes on and says, okay. I mean, you still are in a position to stay at that point. I mean, okay, I'll accept that is different than, Your Honor, if that's the instruction that you're going to give, I would object for the record and I think that this is the appropriate instruction. And then you've got your place marker in. But okay, I'll accept that. Yes. The court has found the same. Obviously, in my position, that would have been ideal if the trial court did that. But the Ninth Circuit has also recognized that when any further objections would be futile, none is required. But didn't the judge invite at the end, before he let the jury go into deliberations, didn't he ask if there were any objections to the charge and there was no response? No. I think that's because, Your Honor, Judge Vance had already been litigated. He knew any further objection would be futile. They did litigate this issue before, which is proper. So I think that no objection is that. The charge as given is what we expected, Your Honor, to give. There is no surprise here. You didn't make a mistake in reading it. But I would go back to the earlier objection. Of course, even if it is the other question, though, you've argued that the charge should have said that the defendant violated a known legal duty. What's the difference between that and he must have known that his acts constituted copyright infringement? I think the charge as given, Your Honor, was simply too objective. That language you just read there, of course, is my other argument, that it contradicts the first part. But even sitting alone, the defendant has to have the government has to prove the defendant had the subjective intent, the specific intent. And this charge here, I think, veers too much towards an objective standard, that a reasonable person should have known that his actions were illegal. He doesn't say a reasonable person. And it says he must have known that his acts constituted copyright infringement. That's correct, of course. But it also doesn't tell the jury specifically that you must find the defendant had the specific intent. And the judge never explained to the jury that it was the subjective intent, that it's not a reasonable person, it's rather Mr. Anderson, who had strong views on this subject and testified to it. So that's – I understand Your Honor's point, of course. I think the charge was confused and came close to what was required, but failed to actually specify that he needed a specific intent and that it was a subjective standard. That's my complaint with the charge. And on one other point, you suggest that Adobe was not the victim of the crime here. Isn't the victim of copyright infringement the copyright holder? Couldn't Adobe, as a copyright holder, have sued Anderson for infringement in a civil action? It could have. And their amount of damages, or if you want to make a reference to restitution, they would have been entitled to damages. But the criminal forfeiture statute is different from the damage that you're entitled to as a civil plaintiff. Here under Fair, and if I'm pronouncing it right, Chalupnik, the Eighth Circuit and the D.C. Circuit have made clear that if there are going to be losses for criminal restitution, they must be not speculative, but proven. Fair and Chalupnik go into – I think Fair is actually another Adobe case where this theory of the government of lost sales is just too speculative. That doesn't answer the question of whether Adobe was the victim. I think they are a victim, but – That answers that question. They are a victim. They are a victim under the statute for loss. You just don't think they should get as much as they got. No. I think the real victims here are the consumers who purchased the – What's the difference between a real victim and a victim? I think they're the victim under the law statute for the sentencing guidelines calculations. That is separated apart as a different distinction from restitution. Now, what does the statute say that you – you're not a victim if you're a copyright holder and somebody goes out and sells infringing copies? Well – Where do you read in the statute that says, oh, no, you're not really a victim of that crime? Of course you're a victim of the crime. You're meant to be. But the situation where the software is purchased not directly from Adobe, but from Best Buy. Oh, of course. Isn't Best Buy the victim here? What if it's wonderful? What if it's wonderful software? In fact, some of these people thought it was wonderful and they actually managed to use the phony – whatever they call that thing – so they could get by the everything worked just like it was supposed to. It's wonderful stuff. It's the Adobe software, basically. Yes, Your Honor. But it's sold in various places, not just through Adobe. So if the purchase is from Best Buy, as the fair case recognizes, I think, isn't Best Buy then the victim? Yes, they owe money to Adobe because they've licensed it. But Adobe is not the only seller of this software. They license it to others. Those people can become the victims here. The distinction here is the government got restitution for the full retail price, regardless of showing whether or not Adobe was going to actually get that price from these victims. That's a different question, isn't it? It is, Your Honor. It is, Your Honor. That doesn't answer the victim question. They're still a victim. And, like I said, maybe you think they got too much money. That's another question. It is, Your Honor. And I guess my answer to the first question is they are a victim if they're the direct seller. But if they've licensed it to other people, aren't the license holders then the victims? Do you want to reserve? Yes, I do, Your Honor. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Susan Gray and I represent the United States. I'll address first the issue of the jury instruction and, second, the restitution and prepare to answer any questions the Court has regarding the evidentiary issue. The jury the district court here properly instructed the jury on the willfulness element of criminal copyright. Here the defendant accepted that instruction as given by the court. So this court's review is for plain error. But under any standard, there was no error here. As Judge Callahan. Okay. But you relied on an outdated version of the civil jury instruction for willfulness, right? From the 2001 version of manual of model civil jury instructions. Why didn't you propose the updated version of the 2007 manual that omitted the word may? Your Honor, what the ‑‑ I believe what the trial attorneys were trying to do was craft an instruction that combined the civil and the criminal. And I think that comes out during the conversation of the charging conference is ‑‑ but in any event, there was no error here because the specific third sentence of that instruction was the one requested and including the defendant's instruction. And under that instruction, the jury could not have convicted the defendant without finding that he specifically intended to infringe the copyright. Do you concede that if the charge said simply that it may constitute copyright infringement, that that would be wrong? No, Your Honor, I don't. Particularly under the case of United States v. Hillman, which I cited in my brief, which indicated at least in the Seventh Circuit that the mere likelihood that the error of conduct might infringe the copyright of a criminal act would be sufficient for willfulness. But the court doesn't need to decide that here because we have the third sentence which specifically instructed the jury that Mr. Anderson had to know that his actions were infringing the copyright. Well, it seems we really don't know what the law is here. There isn't a jury instruction that's exactly tested and true. Well, and that's ‑‑ So if I'm understanding your argument, you're saying that third sentence puts the highest standard, the highest burden on the government. That's correct, Your Honor. In fact, it puts a ‑‑ So then if that was satisfied, then even if the instruction was wrong, we know that, you know, he didn't get convicted of something lesser. No, Your Honor. In fact, the government's position is that this instruction imposed a higher standard than was even necessary under this circuit precedent on willfulness, and that it ‑‑ And the jury didn't find that he violated a known legal duty. Here they were instructed ‑‑ they had to find that he had violated a specific law, the criminal copyright infringement. Well, in taking Mr. Anderson's position, you know, let's play that, you know, his counsel is not sitting here, but I'm going to do this for him on ‑‑ is not up at the podium. But the jury did ask a question. They did seem to be confused in that area. And then when the judge reread the, as judges do, you don't like have a freewheeling conversation, but you reread the instruction that you give, and then what, 20 minutes later they come back with a verdict? Well, Your Honor, I think that may be reading too much into that note from the jury. If you ‑‑ I went back and looked at it this weekend, and all that note says is one juror had gone and looked up the definition in the dictionary, and the instruction says, please advise. It's unclear whether the jury foreman is, please advise what to do about this juror who violated the court's directions about what to do, or please advise us again on what willfully means. All that note recognizes is that there was one juror that wasn't following the rules and maybe was doing their own legal research. It doesn't evidence ‑‑ there's no evidence in the record that the jury was confused about the element of willfulness. How did you argue the case? The ‑‑ I'm sorry, Your Honor, I'm trying to ‑‑ Did you argue the case, was your theory of the case the third sentence? Yes, that he actually knew he was intended to ‑‑ Or did you argue you don't have to ‑‑ he didn't have to actually know it could be lower. How did you argue the case? Your Honor, the government argued that he specifically, that he knew, in fact, the evidence showed that he had researched copyright law and found that, and included some of it on his disk, embedded in the disk where nobody could see it. But moreover, he, when he was asked about that, he represented that this was legal and that, even more troubling, is that he had also done research and found that if he wanted to do it legally, it was too expensive for him. And that, the government went through in closing argument, and each of the pieces of evidence that indicated he was acting willful, and that they were demonstrated by his own actions. And that is that he made no mention of limited use. So he was trying to avoid the copyright laws. His ads did offer this as original equipment manufacturing. The materials he sent to the Adobe investigator mentioned the word new three different times. The e-mails to the customers, he continually represented this as new. And when they were asked were there licensing restrictions, evidencing and knowledge of whether or not he needed to have a license to be distributing this, he said no, there are no restrictions. And perhaps the most damning fact here was that the defendant possessed a key generator, which was designed to get around the protections that Adobe had put on its own products to protect its copyright. I'd like to hear from you on restitution, because it seems to me that you may have some problems on the restitution calculation. So the government agreed that Anderson should get credit for return software when calculating restitution. If the district court did not give him credit for those returns, then how do we reconcile that the case law indicating that any restitution award must be limited to the victim's actual losses? And it – and then I'm wondering why don't we adopt the actual loss analysis in the United States to be fair? I see – I just see some – I see some possible merit to what he's saying about how the restitution was calculated. Your Honor, the district – I think this is not chalupnik and it is not fair for a variety of reasons. And the district court properly calculated the guidelines, the restitution loss, based on, unlike chalupnik, proven actual sales of the unauthorized copies multiplied by the retail price. And unlike chalupnik – But Adobe hasn't lost the retail price. They have – they lost profits on the sales, but they didn't lose the retail price,  So it's even assuming that you prove that all these people would have bought it from Adobe if they hadn't have bought it from the defendant. Well, Your Honor, if I may, first and foremost, I think the government has carried its burden of proving loss, that these sales occurred. They're proven by the actual sales themselves. These people went looking for an Adobe product, and unlike chalupnik or in other But now, but Adobe wouldn't – I think what Judge Vance is saying, Adobe wouldn't have gotten – you don't get the full retail price. That's not what you make because it costs you something to make it. Well, Your Honor, that issue was not raised before the district court. And we do not agree with FAIR, but it was never – the issue of lost profits was never presented to the district court. And if the court is inclined to follow FAIR, we suggest that the appropriate remedy would be to remand it to the district court for it to consider the lost profits argument in the first instance. I do think it's important to remember, though, that this is a crime of theft. What's being stolen here, as the district court noted at the time of sentencing, is an idea, the ability to sell that idea. And the loss occurs at the moment he sold. He took that idea, copied it, and he sold it. Adobe lost that ability to control what happened to its product. Thus, analyzing it from the cost of the diverted sale, the loss occurred at that time, is consistent with actually the statute, 366.3b1b1i, which directs the court in computing restitution to look at the value of the lost property on the date of the loss. Now, if you look at the statute, profits doesn't appear in that statute. And in the case of FAIR, the reason profits came up at all was because the defendant there had was pirating out-of-date software, and he argued, I should be given credit for the fact that when people buy my out-of-date software, go to Adobe, and that Adobe actually makes some profit off my pirated work because they get people update through Adobe. There's nothing like that here. Here, there's never any suggestion that Adobe benefited or received any profits from Anderson's scheme. So that's why the retail price is really the only calculation we can use in this instance. Your time appears to be expired. Unless my colleagues have any questions, which they appear to not, that will complete your oral argument. Thank you, Your Honor. You have approximately a minute for rebuttal. Thank you, Your Honor. Just very briefly, and the last point for the restitution, as Judge Vance has said, even if all these purchases of the software had instead purchased at the full retail price from Adobe, Adobe still wouldn't make the full retail price. There's costs involved. And, of course, there's no evidence in the record that all these purchases would have purchased directly from Adobe. They could have purchased from other retailers who have a license. And there's the third issue of these people were purchasing at a reduced price. Of course, at least one victim who testified said she couldn't afford the full price. So I would also say it's speculative to think that every single purchaser at the reduced price would have instead purchased at the full retail price. Unless there are any other questions, I'd submit it on that. There do not appear to be. Thank you both for your argument. Thank you, Your Honor. This matter will stand submitted.
judges: Vance, Fernandez, Callahan